## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **JIMMY DEAN JAMES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO.** |
| | )   **7:12-cv-3942-AKK** |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Plaintiff Jimmy Dean James ("James") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

James, whose past relevant experience includes work as machine and forklift operator, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on March 24, 2009, alleging a disability onset date of July 23, 2009, due to depression, high blood pressure, and chest pains. (R. 27, 182). After

the SSA denied James's claim, he requested a hearing before an ALJ. (R. 86). The ALJ subsequently denied James's claim, (R. 24-38), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). James then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the

Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that James had not engaged in substantial gainful activity since March 24, 2009, and, therefore, met Step One.  (R. 29).  Next, the ALJ found that James satisfied Step Two because he suffered from the severe impairments of "hypertension, peripheral edema and osteoarthritis." *Id*.  The ALJ then proceeded to the next step and found that James failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 31).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that James has the residual functional capacity (RFC) to

> lift 20 pounds occasionally and 10 pounds frequently; stand and walk four hours out of an 8-hour day; sit six hours out of an 8-hour day; frequently climb ramps and stairs; occasionally climb ladders and scaffolds; can never climb ropes; frequently balance, stoop, crouch and crawl; has no manipulative, visual or communicative limitations; must avoid

>concentrated exposure to extreme cold or heat and wetness; and he
experiences mild to moderate pain.

(R. 32). In light of his RFC, the ALJ held that James "is unable to perform any past relevant work." (R. 36). Lastly, in Step Five, the ALJ considered James's age, education, work experience,[1] and RFC and determined "there are jobs that exist in significant numbers in the national economy [James] can perform." *Id.* Therefore, the ALJ found that James "has not been under a disability, as defined in the Social Security Act, from March 24, 2009, through the date of this decision." (R. 37).

## V.  Analysis

The court now turns to James's contentions that the ALJ erred by (1) failing to give proper weight to the opinion of his treating physician; (2) failing to recontact his treating physician; and (3) giving controlling weight to the opinion of the State agency reviewing psychiatrist. *See* doc. 7 at 7-10. The court addresses each contention in turn.

### A.     The ALJ properly considered Dr. Klaiss's opinion

James contends the ALJ did not give proper weight to the opinion of Dr. Kitturah Klaiss, one of his treating physicians. The record shows Dr. Klaiss treated James for high blood pressure and back pain from September 2, 2009 through October 29, 2010. (R. 270-77, 284-85). Dr. Klaiss also completed a physical capacities evaluation on October 14, 2010, which limited James to a total of five hours sitting and two hours

---

[1] As of the date of the ALJ's decision, James was 50 years old, had a high school education, and had past relevant medium semi-skilled work as a machine operator and forklift operator. (R. 36).

5

standing/walking in an eight-hour workday, with additional postural limitations that included no stooping.  (R. 278).  Dr. Klaiss also  indicated on a Clinical Assessment of Pain form that James's pain was "distracting to adequate performance of daily activities or work."  (R. 279).  James argues the ALJ erred in giving Dr. Klaiss's opinion little weight.  Doc. 7 at 7-9.

To determine how much weight to give Dr. Klaiss's opinion, the ALJ had to consider several factors, including whether Dr. Klaiss (1) had examined James; (2) had a treating relationship with James; (3) presented medical evidence and explanation supporting the opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist.  *See* 20 C.F.R. § 416.927(c).  Because Dr. Klaiss is a treating physician, the ALJ must give "controlling weight" to his opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(c)(2).  Moreover, in this circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records.  *Id*.  Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error."  *Id.*

Here, ALJ correctly applied the law and articulated multiple reasons for giving Dr. Klaiss's opinion "little weight." (R. 35).  Specifically, the ALJ found that Dr. Klaiss's own treatment notes undermine his opinions:  "Dr. Klaiss's opinion regarding the physical limitations of the claimant are inconsistent with not only the claimant's testimony in this matter, but it is inconsistent with her treatment records." *Id.*  As the ALJ observed, "Dr. Klaiss's treatment records show that while the claimant reported pain to her, [Dr. Klaiss] advised him on more than one occasion to perform stretching exercises for his back and to exercise in order to get his cholesterol under control." *Id.*  Based on this record, the ALJ reasonably found Dr. Klaiss's "recommendation that the claimant exercise is inconsistent with her opinion that the claimant would have pain during physical activity to such an extent as to cause him to become distracted from or to totally abandon, such activity." *Id.*

Next, the ALJ found Dr. Klaiss's opinions were inconsistent with James's testimony "that he was receiving worker's compensation and that he had been seeking employment."[2]  *Id.*  The ALJ also noted that James "did not testify that he stopped working due to a physical inability to perform the work; rather, he testified that he stopped working because the company closed down," and that "had the company remained in business, he would still try to work performing the duties of his previous

---

[2]  James testified that he had looked for work, "but there wasn't nothing I preferred, and jobs some of them wouldn't hire no way." (R. 59).

7

work." *Id.* The ALJ reasonably found this testimony was inconsistent with Dr. Klaiss's opinions.

Finally, the ALJ found that a review of the record as a whole supported giving Dr. Klaiss's opinions little weight. *Id.* For example, as the ALJ noted, the consultative physical examination by Dr. John Waits was essentially normal:

> Other than some mild tenderness to his bilateral medial knees, the claimant's physical examination was normal. He had a full range of motion in all of his joints and back, no spasms or deformity in his back, and negative straight leg raises. Dr. Waits indicated that the claimant had no motor weakness, a negative Romberg's, intact fine and gross manipulation, intact dexterity, and 5/5 grip strength. His assessment was leg and foot pain, depression, and hypertension.

(R. 33) (citations to the record omitted). Moreover, the ALJ observed that "Dr. Waits stated that based on his medical findings, the claimant has the ability to do work-related activities such as sitting, standing, walking, lifting, carrying handling objects, hearing, speaking and traveling." *Id.*

Put simply, the ALJ considered the factors set forth in the regulations and, consistent with the law of this circuit, articulated good cause for giving Dr. Klaiss's opinions limited weight: i.e., that Dr. Klaiss's opinions were inconsistent with her own treatment notes, James's testimony, and the medical evidence from other physicians. The record supports the ALJ's findings. Therefore, the ALJ had good cause for rejecting Dr. Klaiss's opinions, and committed no reversible error. *See Lewis*, 125 F.3d at 1440 ("good cause" exists when physician's opinion is inconsistent with own records, a contrary finding is supported by the evidence, and the evidence does not bolster physician's

8

opinion); 20 C.F.R. § 416.927(c)(2) (opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive controlling weight).

      B.      <u>The ALJ was not required to recontact Dr. Klaiss.</u>

The court is not persuaded by James's second contention that the ALJ should have contacted Dr. Klaiss for clarification.  Doc. 8 at 12-13.  Under the relevant regulation in effect at the time,[3] the ALJ only had a duty to contact Dr. Klaiss if there was insufficient medical evidence to allow the ALJ to determine whether James was disabled:

> When the evidence we receive from your treating physician or psychologist or other medical source is *inadequate for us to determine whether you are disabled,* we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

20 C.F.R. § 404.912(e)(2010) (emphasis added).  Unfortunately for James, the medical evidence included numerous treatment notes and a consultative examination that showed the extent of his impairments.  Consequently, the ALJ had no obligation to recontact Dr. Klaiss because the record contained sufficient medical evidence to allow the ALJ to make an informed disability determination.

---

     [3] New regulations regarding recontacting of medical sources went into effect on March 26, 2012.  77 Fed. Reg. 10651-01 (February 23, 2012).  Under the new regulations, recontacting a medical source is within the discretion of the ALJ.  *See* 20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician . . . .") (emphasis added).

Alternatively, James's contention fails because he has not shown the requisite prejudice. Before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981). James has not established the requisite prejudice because there are no evidentiary gaps in the record that prevented the ALJ from making a conclusive determination regarding his disability. Therefore, remand for development of the record is not required.

    C.    <u>The ALJ did not err in giving significant weight to the report of the State agency reviewing psychiatrist.</u>

Finally, James contends that the ALJ improperly gave "controlling weight" to Dr. Robert Estock, the State agency reviewing psychiatrist. Doc. 7 at 10-11. The record does not support James's contention. The court notes that an ALJ must consider the findings of a State agency medical consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources. *See* 20 C.F.R. § 416.927(e)(2). Consistent with the regulations, the ALJ gave Dr. Estock's opinion "significant weight" and explained his reasons:

> Although Dr. Estock did not examine the claimant, he provided specific reasons for his opinion that the claimant does not have a severe mental impairment, indicating that it was based on the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. Dr. Estock's opinion is internally consistent and consistent with the evidence as a whole. As it is well supported, it has been given significant weight.

10

(R. 36).  Contrary to James's contention, the ALJ committed no error because although "the report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report," an ALJ may rely on the report when it does not contradict the findings of examining doctors.  *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  There is no such contradiction here because James has not received any mental health treatment and the only report from an examining mental healthcare source is the consultative report of Dr. John Goff, Ph.D., who opined James's "depression in and of itself would seem to . . . represent a mild to moderate impairment that might improve if he were to obtain treatment."  (R. 221).  In fact, the ALJ gave significant weight to Dr. Goff's report, and relied on it to find James's depression was not a "severe" impairment.  (R. 28, 35).  In other words, Dr. Goff's report does not contradict Dr. Estock's findings of mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace.  (R. 232).  Significantly, only Dr. Estock specifically assessed how James's mental impairment affected his functioning in these areas, which are relevant to a determination of whether James met a listing.  As the Eleventh Circuit found under similar circumstances:

> Most importantly, [the nonexamining doctor] provided an interpretation of [the claimant's] condition vis-a-vis the limitations those conditions placed on [the claimant's] abilities.  Because this information was not contained in either [of the two examining doctor's] reports, we cannot say that [the nonexamining doctor] contradicted their findings. Consequently, the ALJ did not err in relying on [the nonexamining doctor's] report.

11

937 F.2d at 585.  Similarly, here, because Dr. Estock's report was not contradicted by the report of Dr. Goff, the ALJ did not err in giving it significant weight.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that James is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done this 30th day of July, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE